IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-2218-WJM-KMT

TYRONE JOHNSON, and
MICHELLE JOHNSON,

    Plaintiffs,

v.

AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANIES, a/k/a ANPAC,

    Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

In this insurance action, Plaintiffs Dr. Tyrone Johnson and Michelle Johnson (collectively, "Plaintiffs") bring a breach of contract claim seeking payment of underinsured motorist ("UIM") insurance benefits under a policy issued by Defendant American National Property & Casualty Companies ("American National"), as well as a common law bad faith breach of insurance contract claim and a statutory claim for unreasonable delay or denial of insurance benefits under Colorado Revised Statutes §§ 10-3-1115 & -1116. Dr. Johnson alleges that he was injured in a car accident, and Ms. Johnson brings a corresponding loss of consortium claim. Before the Court is American National's Motion for Summary Judgment (the "Motion"). (ECF No. 29.) For the reasons explained below, the Court grants the Motion.

### I. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

Where, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotation marks omitted). A party must support an assertion that a fact is genuinely disputed by "citing

2

to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"[C]onclusory and self-serving statements are insufficient to survive summary judgment." *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000). Likewise, "general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment," *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 834 (10th Cir. 1986), and "[v]ague, conclusory statements do not suffice to create a genuine issue of material fact," *Ford*, 222. F.3d at 777. Rather, "[t]o survive summary judgment, a nonmoving party must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016) (internal quotation marks omitted). Moreover, this Court is not obliged to "comb the record" to identify factual disputes or make a party's case for it. *Ford*, 222 F.3d at 777. Rather, "on a motion for summary judgment, *it is the responding party's burden* to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation marks omitted) (emphasis added).

## II. BACKGROUND

The majority of the facts as presented by American National in the summary judgment briefing are undisputed. Plaintiffs do not present additional facts in their response brief. (ECF No. 32 at 6–7.)

3

Dr. Johnson was involved in a slip-and-fall in his bathroom on April 18, 2012, and suffered a concussion and traumatic brain injury. (ECF No. 29-20 at 1.)[1] Though not explicitly set forth in the facts section by either party, Dr. Johnson's prior injury is relevant to the parties' dispute.

On February 6, 2014, Dr. Johnson was in a car accident with "the underlying tortfeasor," David Hurley. (ECF No. 33 at 2, ¶ A.) Ms. Johnson was not involved. (*Id.*) Dr. Johnson claims that he sustained injuries from the accident resulting in pain, suffering, permanent impairment, lost wages, and a loss of earning capacity due to his inability to continue his work as a chiropractor. (*Id.*; *see* ECF No. 5 ¶ 7.) Ms. Johnson claims loss of consortium due to Dr. Johnson's injuries. (ECF No. 33 at 2, ¶ A.)

Dr. Johnson sought and received $100,000 in compensation from Hurley, the policy limits of Hurley's insurance carrier, on June 23, 2016. (*Id.* ¶ B.) Ms. Johnson did not seek loss of consortium from Hurley. (*Id.*) American National granted consent to settle with the Hurley's insurance company. (*Id.* ¶ E.)

On June 30, 2016, Dr. Johnson notified American National of his claim for UIM benefits under a policy he maintained with American National, and American National acknowledged receipt of the claim. (*Id.* at 3, ¶¶ C, E.) Dr. Johnson's claim letter asked American National to "review Dr. Johnson's file," but did not include a specific monetary demand. (*Id.* ¶ D.)

Dr. Johnson's policy contained the following provision for UIM coverage:

> **We** will pay damages for **bodily injury** which an **insured**

---

[1] Citations to docketed materials are to the page number in the CM/ECF header rather than to any internal pagination.

4

> **person** is legally entitled to recover from the owner or operator of an **uninsured** or **underinsured motor vehicle**. The **bodily injury** must be caused by an accident and result from the ownership, maintenance, or use of the **uninsured** or **underinsured motor vehicle**.
>
> Determination whether an **insured person** is legally entitled to recover damages or the amount of damages shall be made by agreement between the **insured person** and **us**.

(ECF No. 29-25 at 12 (emphasis in original); ECF No. 29 at 14.)[2]

On July 20, 2016, Plaintiffs submitted medical records for Dr. Johnson for American National's consideration "as part of Dr. Johnson's settlement discussions." (*Id.* ¶ F.) The next day, Tanya Zaffuto, an American National insurance adjuster, contacted Plaintiffs' counsel regarding Dr. Johnson's claim. (*Id.* at 4, ¶ G.) She informed counsel that an independent evaluation may be needed to apportion the injury from the impact of the car accident as compared to Dr. Johnson's "fall in the tub" several years prior. (*Id.*; *see* ECF No. 29-4.) Zaffuto informed counsel that she "was going to extend an offer of $10k in good faith on this one," and sent a letter confirming the $10,000 offer. (ECF No. 33 at 4, ¶ G; *see* ECF No. 29-5 at 1.)

In August 2016, American National requested that Dr. Johnson attend an "independent neuropsychological evaluation" with Dr. Jennifer Geiger, as well as provide additional medical records and financial information. (ECF No. 33 at 4–5, ¶ H.) American National again requested the missing medical and financial records in November 2016. (*Id.* at 5–6, ¶ I.)

---

[2] American National includes this language in the argument section of its brief, not the statement of facts. Despite this irregularity, Plaintiffs do not dispute that this language is the proper wording of their policy with American National.

Dr. Johnson saw Dr. Geiger on October 11, 2016. (*Id.*) Her report concluded that it was improbable that Dr. Johnson sustained a concussion in the February 2014 accident and that Dr. Johnson did not sustain any permanent impairment as a result of the car accident. (*Id.*)

Plaintiffs submit a October 21, 2014 report from Dr. Brad Gulla, "a chiropractic specialist providing treatment to" Dr. Johnson, apportioning 70% of his treatment of Dr. Johnson to the car accident and 30% to the April 2012 fall. (ECF No. 32 at 6–7; ECF No. 32-1 at 1.) The circumstances of this report are unclear because Plaintiffs only reference this report in the argument section of their response opposing the Motion; they do not include it in a statement of facts, and as a consequence American National did not admit or deny the related factual allegations. *See* WJM Revised Practice Standards II.D.5 & 6.

In December 2016, per American National's repeated requests, Plaintiffs provided a list of Dr. Johnson's medical providers as well as Dr. Johnson's tax returns for 2011, 2012, 2013, and 2014. (*Id.* at 7, ¶¶ J–K.) Plaintiffs also submitted a report from Dr. Anthony Ricci "for further consideration." (*Id.* ¶ L.) American National then requested that Plaintiffs provide the raw data on which Dr. Ricci relied, which Plaintiffs then supplied. (*Id.*) American National states that it asked for the raw data so that Dr. Geiger could review it and update her report. (*Id.*) In February 2017, American National provided to Plaintiffs an addendum report from Dr. Geiger. (*Id.* at 8, ¶ M.)

Also in February 2017, American National asked Plaintiffs to their confirm the total claimed medical expenses and calculations of lost wages and loss of earning

6

capacity or loss of business. (*Id.* ¶ N.) Plaintiffs provided reports from Dr. Helffenstein and Dr. Stockdale, as well as a statement from Ms. Johnson "regarding the effects of the collision on Dr. Johnson." American National states that they forwarded this new information to Dr. Geiger. (*Id.* ¶ O.)

On February 16, 2017, Dr. Geiger issued a second addendum report which confirmed her conclusion that it was improbable that Dr. Johnson sustained a concussion as a result of the February 2014 accident and that her opinions in her initial November 2016 report remained unchanged. (*Id.* at 9–10, ¶ Q.)

Also on February 16, 2017, Plaintiffs notified American National of Ms. Johnson's loss of consortium claim. (*Id.* at 9, ¶ P.) In response, American National requested any and all evidence supporting Ms. Johnson's claim. (*Id.*)

On April 10, 2017, Plaintiffs submitted a demand under their underinsured motorist policy for the policy limit of $250,000, including an economic loss demand for Dr. Johnson for $1.2 million. Plaintiffs contend that the economic loss demand was appropriate because Dr. Johnson was unable to continue his chiropractic business or a start-up boutique after the car accident. (*Id.* at 10, ¶ R.) A month later, Plaintiffs provided a vocation rehabilitation report from Michael Fitzgibbons regarding Dr. Johnson's loss of future earning potential. (*Id.* ¶ S.)

American National states that it then retained Gregory Taylor and Kyle Jacobsen as forensic economists to opine on Dr. Johnson's potential economic losses, and to focus in particular on Dr. Johnson's earnings because he had closed his chiropractic business in December 2013, three months prior to the car accident. (*Id.* at 10–11, ¶ T.)

7

Jacobsen's economic report stated that it was "highly questionable whether [Dr. Johnson] would have or could have re-opened a profitable practice" after closing his practice in December 2013 and that it was "completely speculative to assume that Dr. Johnson would have opened a small practice and earn[ed] revenues of approximately $50,000 per year." (ECF No. 29-20 at 10–11.) Jacobsen also requested to interview Dr. Johnson and asked for additional financial information. (*Id.* at 11, 16–17.)

On June 6, 2017, the parties attended mediation. (ECF No. 33 at 11, ¶ U.) American National increased its settlement offer to $20,000. (*Id.* ¶ V.) Plaintiffs rejected this offer. (*Id.*) Two days later, American National requested additional information to support Plaintiffs' economic loss claim. (*Id.* ¶ W.) Plaintiffs did not respond to this letter and American National again requested this information in August 2017. (*Id.* ¶ X.) American National maintains that Dr. Johnson's physical injuries and economic loss are related to his April 2012 slip-and-fall or other pre-existing conditions, not the result of the accident. (*Id.* at 12, ¶ AA.)

Plaintiffs filed the instant action on August 18, 2017 in state court. (ECF No. 5.) American National removed the action to this Court based on the diversity of the parties and the amount in controversy. (ECF No. 1.)

### III. ANALYSIS

**A.    Breach of Contract**

"It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance;

(3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

American National contends that it did not fail to perform the contract because its performance was not due under the terms of the contract. American National argues that Plaintiffs present "no evidence that they are 'legally entitled'" to UIM benefits under their policy because they have not shown that their injuries and damages were either caused by the car accident or resulted from ownership, maintenance, and use of the motor vehicle. (ECF No. 29 at 14.) American National also suggests that evidence supports a conclusion that all injuries and damages were pre-existing or resulted from Dr. Johnson's fall in 2012, undermining Plaintiffs' claim for damages resulting from any alleged breach of contract.

Brief as it is, American National's argument triggers for Plaintiffs an obligation to set forth "specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for" Plaintiffs because Plaintiffs will bear the burden of proof at trial. *See Adler*, 144 F.3d at 671 ("[A] movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element."). In response, Plaintiffs must "go beyond the pleadings and set forth specific facts," *id.*, "by citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A).

Despite this burden, Plaintiffs fail to cite to particular parts of the record that would allow a rational fact finder to find in their favor. Instead, Plaintiffs merely rely on conclusory statements that there is evidence available, without ever identifying the

9

specific evidence. (ECF No. 32 at 5–6.) For example, Plaintiffs state that they have "presented plenty of evidence to the Defendant to support the claim for Underinsured Motorist Benefits" and "provided the Defendant . . . with multiple reports from various experts as referenced in" ECF Nos. 29-18 and 29-19. (*Id.*) The two documents cited by Plaintiffs in support of these contentions are a April 2017 demand letter (which references various doctors' reports) and a cover letter from Plaintiffs' counsel to American National providing a report for a vocational expert. However, Plaintiffs do not put forth what facts in those underlying reports they would rely on at trial, they fail cite to specific portions of the underlying reports, nor did they even provide those reports to the Court for consideration and review.

Plaintiffs further assert that "these experts" referenced in the two letters "include multiple medical professionals, vocational rehabilitation experts[,] and specialists in neuropsychology who have established that the injuries suffered by the Plaintiff exceed the amount of Underinsured Motorist Coverage." (*Id.* at 6.) However, Plaintiffs never establish who these experts are or if they have been disclosed as testifying experts, nor have they set forth the specific facts and opinions that these experts would provide at trial in support of Plaintiffs' claims. Nor is this Court under any obligation "to comb the record" of possible facts and evidence in order to make Plaintiffs' case for them. *See Adler*, 144 F.3d at 672; *Ford*, 222 F.3d at 777. These conclusory statements put forth by Plaintiffs, without more, are simply insufficient as a matter of law to establish genuine issues of material fact with regard to their claims.

The closest Plaintiffs come to establishing a specific fact admissible at trial to support Dr. Johnson's breach of contract claim is citing the report of Dr. Gulla, which

stated that 70% of his treatment of Dr. Johnson could be apportioned to the car accident. (*Id.* at 6.) However, Plaintiffs failed to identify Dr. Gulla as a lay or expert witness that they would potentially call at trial in the Amended Final Pretrial Order. (ECF No. 37 at 6–10.) It is thus unclear to the Court how Dr. Gulla's statements would be admissible at trial. Moreover, this single factual allegation alone, even were it admissible at trial, without more, cannot support a conclusion that there are genuinely disputed material facts such that the case should go to a jury. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) ("To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury.").

Exacerbating the problematic posture in which their legally deficient summary judgment response has placed them, Plaintiffs also make no effort to explain how Ms. Johnson's injuries and damages were caused by the car accident, or how they resulted from the ownership, maintenance, and use of the insured vehicle. Absent any evidence of material facts supporting Ms. Johnson's claim, Plaintiffs have plainly failed to carry their burden on summary judgment on her loss of consortium claim as well.

In sum, the "facts" presented by Plaintiffs in opposition to summary judgment are only vague and conclusory statements that do not suffice to create a genuine issue of material fact in the context of Rule 56. *See Pasternak*, 790 F.2d at 834; *Ford*, 222. F.3d at 777. The Court finds that Plaintiffs have failed to carry their burden to show a genuine dispute of material facts, or evidence that would support such a dispute. Accordingly, the Court grants the Motion on the breach of contract claim.

**B.    Common Law and Statutory Bad Faith Breach of Insurance Contract**

Plaintiffs also claim that American National is liable for common law and statutory bad faith breach of an insurance contract.  Colorado recognizes a common law tort of bad faith breach of insurance contract as well as a statutory claim for unreasonable delay or denial of insurance benefits.  *Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1107 (D. Colo. 2013).  Both common law and statutory bad faith claims are predicated on the insurer unreasonably delaying or denying benefits.  *Id.*  As discussed above, Plaintiffs have failed to carry their burden at summary judgment to demonstrate that American National owed benefits to them and as a result breached the insurance contract between them.  Because these bad faith claims are derivative of Plaintiffs' failed breach of contract claim, they also cannot survive American National's Motion.  Accordingly, the Court also grants the Motion on Plaintiffs' common law and statutory bad faith claims.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant American National's Motion for Summary Judgment (ECF No. 29) is GRANTED as to all claims;

2. The Jury Trial set to commence on April 15, 2019, and the Final Trial Preparation Conference set for March 29, 2019, are both hereby VACATED;

3. Judgment shall enter in favor of Defendant, and Defendant shall have their costs; and

4. The Clerk shall terminate this action.

Dated this 6th day of February, 2019.

BY THE COURT:

William J. Martinez
United States District Judge